JOHN H. DONBOLI (SBN: 205218)
E-mail: jdonboli@delmarlawgroup.com
JL SEAN SLATTERY (SBN: 210965)
E-mail: sslattery@delmarlawgroup.com
CAMILLE JOY DECAMP (SBN: 236212)
cdecamp@delmarlawgoup.com
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005

Attorneys for Plaintiff: SONIA HOFMANN,
an individual and on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SONIA HOFMANN, an individual and on behalf of all others similarly situated,

Plaintiff,

vs.

DUTCH, LLC, a California Limited Liability Company; and DOES 1 through 100, inclusive,

Defendant.

CASE NO.: 3:14-cv-02418-GPC-JLB

*Complaint Filed: September 5, 2014*

**CLASS ACTION**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION: (1) GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT; (2) SCHEDULING A FINAL APPROVAL HEARING; AND (3) DIRECTING THAT NOTICE BE SENT TO CLASS MEMBERS**

Date: December 11, 2015
Time: 1:30 p.m.
Courtroom: 2D
Judge: Hon. Gonzalo P. Curiel

# TABLE OF CONTENTS

I. INTRODUCTION……………………………...……..…..………………..…2

II. NATURE OF THE CASE…………………………………….……………..4

III. PROCEDURAL HISTORY ……………………………………………..…4

IV. CLASS DEFINITION………………………………………………………6

V. SIZE OF CLASS……………………………………………………….…6

VI. DESCRIPTION OF THE PROPOSED SETTLEMENT……………………6

VII. NOTICE AND ADMINISTRATION OF THE SETTLEMENT…………...8

VIII. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL…………………….…..…......9

A. The Settlement Approval Process…………………………...……..…9

B. The Proposed Settlement is Presumptively Fair and Easily Meets the Requirements for Preliminary Approval………….……..……10

1. The Settlement is the Product of Serious, Informed and Noncollusive Negotiations…………………….…………….11

2. The Settlement Has No "Obvious Deficiencies" and Falls Well Within the Range for Approval…….……..…….…..….…….12

3. The Settlement Does Not Improperly Grant Preferential Treatment To the Class Representative or Segments Of The Class…………...…………….....…………….....…….……13

4. The Stage Of The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement.……………13

IX. THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE....14

X. THE SETTLEMENT PROVIDES FOR A MEANINGFUL CHARITABLE CONTRIBUTION……..…………..………..…………………..……………..…15

XI. CONCLUSION……………………………………………………….16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dennis v. Kellogg*,
697 F.3d at 866-67……………………………………………..………………16

*In Re Microsoft I-IV Cases*
(2006) 135 Cal.App.4th 707, 729……………………………………………….16

*In re Vitamin Cases*
(2007) 107 Cal.App.4th 820, 830……………………………….………..16, fn 5

*In re Wash. Public Power Supply System Sec. Litig.*
720 F. Supp. 1379, 1392 (D. Ariz. 1989)………………………………..….12

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134, 1149 (2003)…………………………………………………13

*Lane v. Facebook, Inc.*
(9th Cir. 2012) 696 F.3d 811, 821 *cert. denied* 134 S.Ct. 8…………….15, 16

*Nachshin v. AOL, LLC*
663 F.3d at 1040……….…….……..…………….……………..…………..14

*Officers for Justice v. Civil Serv. Com'n of City and Cty. of S.F.*,
688 F.2d 615, 625 (9th Cir. 1982)…………………………………………10

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943, 950 (9th Cir. 1976)……….……….….……………….……..9

*Young v. Polo Retail*,
Case No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006)………………………………………………….…..…..……11

**Statutes:**

Rule 23(e) of the Federal Rules of Civil Procedure…………………………….2

Business & Professions Code § 17200 ("UCL")…………………………...2, 3, 12

Business & Professions Code § 17533.7 (False “Made in USA” Claim)……….2, 3

Civil Code § 1750 (“CLRA”), ……………………………………………………...…3

**Other Authorities**

NEWBERG ON CLASS ACTIONS § 11.41 (2003).…..…..…..…..….9, 10, 11

FEDERAL JUDICIAL CENTER,MANUAL FOR COMPLEX LITIGATION §§ 21.632-.635 (4th ed. 2004)……………..……………9, 10

## I. INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Sonia Hofmann ("Plaintiff"), on behalf of herself and the proposed Settlement Class she represents, respectfully moves for entry of an order: (l) preliminarily approving the proposed settlement[1] in the above-captioned class action litigation with Defendant DUTCH, LLC ("Defendant" or "Dutch"); (2) scheduling a Final Approval Hearing (sometimes referred to as a "Fairness Hearing"); and (3) directing that notice of the proposed settlement be given to Class Members upon approval of the form and method for providing class-wide notice. At the Final Approval Hearing, the following will be considered: (i) the request for final approval of the proposed settlement, and (ii) the entry of the Final Judgment and Injunction. Plaintiff also intends to apply to this Court for an award of attorneys' fees and reimbursement of expenses to Class Counsel, and an enhancement fee award to Plaintiff for her service as the class representative at that time.

After more than a full year of hard-fought litigation, and after participating in a full-day mediation before the Hon. Robert May (Ret.) of JAMS, the parties ultimately reached a settlement on September 11, 2015. The Settlement is believed to be fair, adequate and reasonable. The Settlement permits participating Class Members (those who complete and return a claim form) to obtain a free Dutch electronic gift card code valued at multiples of $20.00 corresponding to the number of Class Products purchased (up to two without proof of purchase and potentially unlimited with proof of purchase), which may only be redeemed at www.CurrentElliott.com.

The measure of restitution was not arbitrarily determined; rather, it was discussed and negotiated at length at mediation with the aid of Judge May (Ret.)

---

[1] The Settlement Agreement is attached as Exhibit 1 to the accompanying Declaration of John H. Donboli ("Donboli Decl.").

and is based on calculations of the amount of foreign-made components in Defendant's jeans products (i.e., the "Class Products") in conjunction with a factoring of the risks of potentially receiving no monetary recovery to the Class at time of trial.

All in all, this Settlement is a fair result for the class. The Parties reached a settlement wherein Dutch, LLC agreed to modify its labeling in the following manner:

| **Factory** | **Fabric Origin** | **Trim Origin** | **Country of Origin Description as of 1/1/2016** |
|---|---|---|---|
| USA | USA | USA | Made in USA |
| USA | USA | IMPORTED < 5% of Wholesale Value | Made in USA |
| USA | IMPORTED | IMPORTED | Made in USA of imported fabric and materials |

In addition, Dutch agreed to a Permanent Injunction as set forth in Exhibit E to the Settlement Agreement that states:

> Without admitting any liability or wrongdoing whatsoever, pursuant to California Business and Professions Code Sections 17203 and 17535, the Enjoined Parties, and each of them, shall be enjoined and restrained from directly or indirectly doing or performing any and all of the following acts or practices: representing, labeling, advertising, selling, offering for sale, and/or distributing any Products that fail to comply with the California "Made in USA" Statute.[2]

If Plaintiff would have rejected the Settlement and continued to litigate this action through trial, there would have been a significant risk that no restitution

[2] California recently amended the California "Made in USA" statute by way of SB-633 on or about September 1, 2015. The new amendment will take effect on January 1, 2016 and will not materially alter any aspect of this proposed settlement.

would have been obtained to the Class given the unsettled nature of California law pertaining to how to properly quantify and measure restitution in false advertising cases (such as this case). In view of this risk, the Settlement is undoubtedly fair, just and adequate.

## II. NATURE OF THE CASE

The Action alleged that Defendant committed unlawful and unfair business practices by falsely labeling its Jeans ("Jeans") as "Made in USA" in violation of, *inter alia*, California's Unfair Competition Law ("UCL") (codified at Cal. Bus. & Prof. Code §§ 17200 *et seq.*) and California's "Made in USA Statute" (codified at Cal. Bus. & Prof. Code § 17533.7).

Plaintiff alleged that contrary to Defendant's "Made in USA" claim, the Jeans were manufactured and/or produced from multiple component parts that were manufactured outside of the United States in violation of California law and/or federal law. Specific to the Plaintiff Transaction, Plaintiff alleged that major subcomponents of Defendant's Jeans that she purchased were foreign made, including but not limited to the trim, fabric, and/or zippers. Plaintiff also alleged that Defendant's conduct constituted false advertising and was violative of the California Consumers Legal Remedies Act.

Defendant denied and continues to deny Plaintiff's allegations.

## III. PROCEDURAL HISTORY

On or about June 30, 2014, Plaintiff sent a 30-day notice of violation to Defendant pursuant to the California Consumers Legal Remedies Act (the "CLRA Letter").

On or about July 28, 2014. Defendant responded to the CLRA Letter by denying all liability.

On or about September 5, 2014, Plaintiff initiated litigation by filing a putative class action complaint in the San Diego Superior Court, styled as

*Hofmann v. Dutch, LLC*, Case No. 37-2014-00030115-CU-NP-CTL (the "State Court Action").

The State Court Action originally alleged that Defendant violated various California laws, including California Business & Professions Code § 17200 *et seq*.; California Business & Professions Code § 17533.7; and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA") as it relates to Defendant's use *in California* of the statement "Made in U.S.A." on packaging for its Jeans that contained less than 100% domestic content. These claims extended to Plaintiff and all other members of the putative California class.

On or about October 9, 2014, Defendant removed the State Court Action to federal court (hereinafter simply referred to as the "Action") and simultaneously filed its Answer. [Docket No. 1].

On or about November 18, 2014, an Early Neutral Evaluation Conference was held before the Hon. Magistrate Judge Jill L. Burkhardt. [Docket No. 6].

On or about December 17, 2014, Defendant filed a motion for judgment on the pleadings ("MJOP") based on principles of federal preemption. [Docket No. 12].

On or about January 30, 2105, Plaintiff filed her Opposition to the MJOP, which took significant time and time and effort to prepare. [Docket No. 17].

Plaintiff also filed a Motion to Strike extrinsic evidence set forth in MJOP. [Docket No. 18].

In addition to the law and motion practice detailed above, Plaintiff also committed a considerable amount of time to propounding extensive written discovery to Defendant and preparing for mediation in March, which led to significant guideposts being established towards resolution that were further negotiated over the following six months. Included in this time was the creation of a viable damages/restitution model that required obtaining and analyzing detailed

summaries of Defendant's cost, pricing, sales, and labeling information for its jeans products (i.e., the "Class Products) after mediation. This evaluation (done in conjunction with Plaintiff's counsel's consultant/expert, not disclosed to Dutch, LLC) was also necessary so the Plaintiff's counsel and Plaintiff could not only properly evaluate the case for purposes of ultimate resolution, but also so Plaintiff could begin preparing and generally outlining Plaintiff's motion for class certification. At the same time, Defendant undertook significant investigation to determine the validity of Plaintiff's claims.

## IV. CLASS DEFINITION

Plaintiff agreed to settle this Action on behalf of a class of similarly situated persons in California who purchased in California or through a website maintained by Dutch, LLC, Defendant's Current/Elliott jeans product that contained any foreign-made component parts that was labeled as "MADE IN USA" or "MADE IN THE USA" (the "Jeans"), from September 5, 2010 to December 31, 2015, for non-commercial use (the "Class Members"). Excluded from the Settlement Class are all persons who are employees, directors, officers, and agents of Defendants or its subsidiaries and affiliated companies, as well as the Court and its immediate family and staff. (Donboli Decl., ¶ 5; Exhibit "1" thereto at ¶¶ A.7, A.28).

## V. SIZE OF CLASS

In preparing for the mediation which led to the ultimate settlement on September 11, 2015, Dutch provided Plaintiff discovery responses that disclosed the total number of units sold of Class Products, which was 396,652, and net sales, which was $30,899,951.82. This undoubtedly is a significant sized class under any definition of the phrase.

## VI. DESCRIPTION OF THE PROPOSED SETTLEMENT

The Parties agreed to a proposed settlement that, if approved by this Honorable Court, will result in dismissal of the Action with prejudice and the

provision of certain benefits to the members of the Class. Under the terms of the Settlement Agreement, if the settlement is granted final approval status by the Court, Defendant will distribute electronic gift card codes redeemable on www.currentelliott.com only and loaded with values of multiples of $20.00 corresponding to the number of units of Class Products purchased during the Class Period to participating Class Members (those who complete and return a claim form or those who elect to submit an online claim form). (Donboli Decl., ¶ 6; Exh. 1 at ¶¶ D.2, F.3). Any Class Member who completes a Claim Form to attest to his or her purchase of a qualifying Class Product during the Class Period shall receive the restitution detailed above. (Donboli Decl., ¶ 6; Exh. 1 at ¶ D.2).

The measure of restitution was not arbitrarily determined; rather, it was discussed and negotiated at length at mediation and after and is based on calculations of the amount of foreign-made component parts in the Class Products in conjunction with a factoring of the risks of potentially receiving no monetary recovery to the Class at time of trial. (Donboli Decl., ¶ 6(a)).

The settlement also has a charitable contribution component. The settlement requires Defendant, at the conclusion of the lawsuit, to make charitable contributions totaling $250,000.00 over the next five years (beginning with calendar year 2015) to various charities that concern women's issues with a nexus to California. The first such charity is StepUp, which propels girls from under-resourced communities to fulfill their potential by empowering them to become more confident, college-bound and career-focused.

The settlement will be administered by a professional Claims Administrator to administer the claims and payment process. Defendant and/or the Claims Administrator shall also obtain an appropriate URL specifically to handle the Settlement process, such as *currentelliottsettlement.com* (the "Settlement Website"). (Donboli Decl., ¶ 8; Exh. 1, at ¶¶ A.29, F.3). The Claims Administrator

shall report any invalid claims and all such determinations of invalidity to both Class Counsel and Defendant's counsel in a timely manner. (Donboli Decl., ¶ 8; Exh. 1, at ¶ F.5).

Class Counsel intends to file and have heard a motion for the recovery of attorneys' fees and costs to be approved by this Honorable Court, including all reasonable fees, costs and expenses related to Plaintiff's prosecution of the Action. The parties agreed to a "*not to exceed*" amount in the amount of $175,000.00. Class Counsel shall also seek confirmation by this Court, at that time, of a single $5,000.00 payment as an incentive award to Plaintiff Sonia Hofmann for serving as the class representative. Defendant agreed not to oppose these requests as long as the requested amounts are at or below the above-stated amounts. (Donboli Decl., ¶ 9; Exh. 1, at ¶¶ G.1, G.4).

**VII. <u>NOTICE AND ADMINISTRATION OF THE SETTLEMENT</u>**

Upon entry of the Preliminary Approval Order, Defendant, in cooperation with its professional Claims Administrator, shall take the following actions:

1. Defendant shall direct the Claims Administrator to mail the Notice to any and all members of the Settlement Class to the extent that Defendant possesses such information in its corporate records. Defendant shall provide this information to the Claims Administrator within 20 days of entry of the order granting Preliminary Approval. The Claims Administrator shall thereafter be tasked with mailing the Postcard Notice (in the form attached to Exhibit F of the Agreement of Settlement) to the potential class members.
2. Defendant shall publish the Short Form Notice (in the form attached as Exhibit B to the Agreement of Settlement) at its discretion to reasonably cover the maximum number of consumers of Defendant's jeans products.

3. Defendant shall provide notice of the settlement on its homepage (www.currentelliott.com) with a hyperlink that will send consumers directly to the Settlement Website.

(Donboli Decl., ¶¶ 10-14; Exh.1, at ¶¶ E.1 – E.6).

These methods are designed to meaningfully reach the largest possible number of potential Class Members. All costs associated with providing notice and administering the claims, including the costs associated with preparing, printing and disseminating the Notice, as directed by the Court in the Preliminary Approval Order, shall be paid by Defendant (not to exceed $90,000). (Donboli Decl. ¶ 14; Exhibit "A" thereto at ¶ F.8).

## VIII. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

### A. The Settlement Approval Process

The law favors settlements, particularly in class actions and complex cases where substantial resources can be conserved by avoiding the time, costs and rigors of prolonged litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (2003) ["By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."].

Where, as here, the parties propose to resolve the claims of a certified class through settlement, they must obtain the court's approval. Fed. R. Civ. Proc. 23(e)(1)(A). The typical process for approving class action settlements is described in the FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION §§ 21.632-.635 (4th ed. 2004): (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) A "formal

fairness hearing," or final approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Id*. This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of class members' interests.

Plaintiff respectfully asks this Court to grant preliminary approval of the proposed Settlement. At this stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MANUAL FOR COMPLEX LITIGATION § 21.632. The Court should grant preliminary approval if the settlement has no obvious deficiencies and "falls within the range of possible approval." NEWBERG ON CLASS ACTIONS § 11.25.

At the next stage of the approval process, the formal fairness hearing, courts consider arguments in favor of and in opposition to the settlement. According to the Ninth Circuit, the fairness hearing should not be turned into a "trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Com'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute…." *Id.* Rather, the inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Id.*

### B. <u>The Proposed Settlement is Presumptively Fair and Easily Meets the Requirements for Preliminary Approval</u>

Courts generally employ a multi-prong test to determine whether

preliminary approval is warranted. A proposed class action settlement is presumptively fair and should be preliminarily approved if the Court finds that: (1) the negotiations leading to the proposed settlement occurred at arm's length; (2) there was sufficient discovery in the litigation for the plaintiff to make an informed judgment on the merits of the claims; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *Young v. Polo Retail,* Case No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *see also* NEWBERG ON CLASS ACTIONS § 11.41. The Settlement easily satisfies these requirements.

**1. <u>The Settlement is the Product of Serious, Informed and Noncollusive Negotiations</u>**

This settlement is the result of extensive and hard-fought negotiations. Defendant expressly denied and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action. Nonetheless, Defendant concluded that it is desirable that this Action be settled in the manner and upon the terms and conditions set forth in the Agreement of Settlement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals. Defendant also determined that it is desirable and beneficial to put to rest the released claims of the Settlement Class.

Class Counsel and Defendant's counsel conducted a thorough investigation into the facts of the class action, including diligently pursuing an investigation of the relevant facts. Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in the Agreement of Settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and the potential risk of no monetary recovery. (Donboli Decl., ¶ 4)

Here the litigation has been hard-fought with aggressive and capable advocacy on both sides. Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arm's length and without any suggestion of undue influence." *In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989). ["Counsels' opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions"].

**2. The Settlement Has No "Obvious Deficiencies" and Falls Well Within the Range for Approval**

The proposed settlement herein has no "obvious deficiencies" and is well within the range of possible approval. All Class members will receive the same opportunity to participate in and receive restitution. It is undeniable that the goal of this litigation, to seek redress for the Class, has been met. (Donboli Decl., ¶ 15).

There is a substantial risk, given the current legal landscape in terms of properly quantifying and measuring damages in cases predicated on violations of the California and/or federal "Made in USA" standards (or false advertising cases in general), that, if this action was not settled, Plaintiff would have been unable to obtain any restitution at time of trial. (Donboli Decl., ¶ 16).

The primary factor that supports resolution at this time, from Plaintiff and Class Counsel's perspective, are the challenges in quantifying and specifically measuring the amount of restitution to Class Members.[3] Restitution under the UCL is limited to measurable amounts acquired by a defendant from consumers by means of unfair competition. Section 17203 of the unfair competition law expressly authorizes courts to make "such orders ... as may be necessary to prevent

---

[3] This would require Plaintiff to expend over $100,000 in expert fees, *at a minimum*, to develop a restitution model that *might* be approved by this Court as there is no clear guideline on how to quantify restitution in UCL false advertising cases. (Donboli Decl., ¶ 17).

the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person ... any money or property, real or personal, which may have been acquired by means of such unfair competition." As the California Supreme Court held in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003) the "object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."

As referenced above, there was a serious risk that Plaintiff would only be able to establish injunctive relief at trial, which would have left Class Members with no monetary relief. In light of the above-referenced risk, expense, and complexity of this case, the parties agreed to resolve this matter as set forth in the Settlement Agreement. (Donboli Decl., ¶ 16).

**3. The Settlement Does Not Improperly Grant Preferential Treatment To the Class Representative or Segments Of The Class**

The relief provided in the settlement will benefit all Class Members equally. The settlement does not improperly grant preferential treatment to Plaintiff or segments of the Class in any way. Each qualified Class Member, including Plaintiff, who files a timely claim, shall receive the aforementioned restitution. Plaintiff will receive no more than any other Class Member who submits a timely claim. In addition, the representative plaintiff will apply to the Court for a modest service award of $5,000 to the extent permitted by this Court (enhancement fees are at times awarded in the $50,000 range).

**4. The Stage Of The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

The stage of the proceedings at which this settlement was reached militates in favor of preliminary approval and ultimately, final approval of the settlement.

The agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation. Class Counsel has conducted a thorough investigation into the facts of the class action, including diligently pursuing an investigation of Class Members' claims against Defendant. (Donboli Decl., ¶¶ 3, 4).

Here, Class Counsel obtained sufficient information from Defendant after conducting extensive discovery, including serving extensive written discovery and exchanging detailed sales, pricing, and financial information in advance of mediation. Extensive due diligence performed by the parties confirmed the cost associated with each component part in the Class Products, which was then used to calculate the proper measure of restitution.[4]

## IX. THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

The Court has broad discretion in approving a practical notice program. The parties have agreed upon procedures by which the Class will be provided with notice of the Settlement. The notice is undoubtedly sufficient when, as in this case, it informs potential class members about the specific restitution that they could expect to receive under the settlement, the procedure for objecting, excluding oneself altogether from the settlement, the amount of fees and costs that may be awarded by the Court, and the date of the Final Approval Hearing.

This notice program was designed to meaningfully reach the largest possible number of potential Class Members, including publication and on Defendant's home page of its website. It complies fully with applicable case law that the notice given should have a reasonable chance of reaching a substantial percentage of the

[4] Plaintiff retained experienced class action attorneys in this case to represent herself and the Class. (See Donboli Decl., ¶¶ 18-19 for additional details in this regard).

Class Members. The notice program contemplated in this Settlement satisfies the requirements of due process, and is the best notice practicable under the circumstances and constitutes due and sufficient notice to all persons entitled thereto. Therefore, the proposed notice procedures comply fully with applicable case law because the notice should have a reasonable chance of reaching a substantial percentage of the Class members. See Manual for Complex Litigation (Fourth) § 21.311 at 291-92.

## X. THE SETTLEMENT PROVIDES FOR A MEANINGFUL CHARITABLE CONTRIBUTION

In addition to the electronic gift card codes available to Class Members who submit timely claim forms, the settlement requires Defendant to make charitable contributions totaling $250,000.00, to be paid over five years, to various charities. The parties to a class action settlement are lawfully permitted to provide for a charitable distribution as part of their settlement as long as the charitable contribution bears a nexus to the interests of the Class. *See Lane v. Facebook, Inc.* (9th Cir. 2012) 696 F.3d 811, 821 *cert. denied* 134 S.Ct. 8 [requiring that a *cy pres* distribution bear only "a substantial nexus to the interests of the class members"].

In *Facebook*, the U.S. Court of Appeals for the Ninth Circuit upheld a *cy pres* in a case involving a class of Facebook users who had been subject to the website's Beacon program. As "direct monetary payments to the class" of any kind were "infeasible," the settlement provided for the creation of a new entity, the Digital Trust Foundation, that would distribute the settlement funds (after payment of attorneys' fees and the like) "to entities that promote the causes of online privacy and security." *Lane*, 696 F.3d at 821. The court found this contained "the requisite nexus between the *cy pres* remedy and the interests

furthered by the plaintiffs' lawsuit." (*Id*. at 822.)[5]

The charitable component of this settlement has the requisite nexus. This is a consumer protection action brought on behalf of the purchasers of jeans (who are predominantly women). Defendant has indicated that the recipient of the charitable contribution will be charities that concern women's issues and have a nexus to California. Dutch makes women's jeans, particularly Current-Elliott jeans. This is consistent with the goal of donating to charities focusing on helping and meeting the needs of women in our society. This provision is distinguishable from those disapproved in *Nachshin*, in which the charities selected were not in any way related to the settlement class, (*Nachshin*, 663 F.3d at 1040), and *Kellogg*, in which the *cy pres* beneficiary was also not identified. (*Kellogg*, 697 F.3d at 866-67.)

An additional goal of a consumer protection action is deterrence or disgorgement. A charitable component such as this ensures that a defendant "incur[s] a minimum liability" and, thus, "shows significant usefulness in effectuating the deterrent and disgorgement purposes of" the underlying cause of action. *See In Re Microsoft I-IV Cases* (2006) 135 Cal.App.4th 707, 729. This additional goal is present in this settlement.

## XI. CONCLUSION

Counsel for the parties committed substantial amounts of time, energy, and resources litigating and ultimately settling this case. After weighing the substantial, certain, and immediate benefits of this settlement against the

---

[5] While this settlement has both a refund component and a charitable contribution component, a settlement that consists almost entirely of the latter has been approved where the class is too large, amorphous and unknown. (See, e.g., *In re Vitamin Cases* (2007) 107 Cal.App.4th 820, 830 [approving settlement of consumer claims that provided funds "to be distributed to charitable, governmental and nonprofit organizations" as the class of indirect purchasers of vitamins was unknown but extensive, including conceivably "nearly every consumer in California" during the relevant time period].)

uncertainty of trial and appeal, Plaintiff and Class Counsel believe that the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary approval. Accordingly, Plaintiff respectfully requests that the Honorable Court preliminarily approve and sign the proposed Preliminary Approval Order filed contemporaneously herewith to permit the distribution and manner of notice. Plaintiff also respectfully requests that the Court schedule a Final Approval Hearing approximately 120 days from the date this Court signs the Preliminary Approval Order.

Dated: October 26, 2015

Respectfully submitted,

DEL MAR LAW GROUP, LLP

By: /sJohn H. Donboli

John H. Donboli
E-mail: jdonboli@delmarlawgroup.com
JL Sean Slattery
E-mail: sslattery@delmarlawgroup.com
Camille Joy DeCamp
Email: cdecamp@delmarlawgoup.com
Attorneys for: SONIA HOFMANN, an individual and on behalf of all others similarly situated