UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA HOFMANN, an individual and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>DUTCH LLC, a California Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>                                    Defendant. | Case No.:  3:14-cv-02418-GPC-JLB<br><br>**ORDER DENYING PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**<br><br>[ECF No. 35] |

Before the Court is parties' Motion for Preliminary Approval of Class Settlement. ECF No. 35. The Settlement provides for: $20 e-gift certificates for the plaintiff class; $250,000 in *cy pres* awards; and up to $175,000.00 in plaintiff's attorney's fees with a clear sailing provision attached.  For the reasons detailed below, the Court **DENIES** the Motion for Preliminary Approval of Class Settlement.

I.      **BACKGROUND**

On June 30, 2014, Plaintiff sent a thirty day notice of violation to Dutch pursuant to the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq*. ("CLRA").

On September 5, 2014, Plaintiff filed a complaint against Dutch in the Superior

Court of California, County of San Diego, captioned *Hofmann v. Dutch, LLC*, Case No. 37-2014-0003015-CU-BT-CTL (the "State Court Action").  (Compl. 1:1; ECF No. 1-6.)  The complaint alleges four causes of action: 1) Violations of California Business and Professional Code sections 172000 *et seq.* (the "UCL"); 2) Violation of California Business and Professions Code section 17533.7; 3) Violation of the California Consumers Legal Remedies Act (the "CLRA"); and 4) Negligent Misrepresentation. (*Id.*)

On October 9, 2014, the Defendant removed the State Action to the United States District Court for the Southern District of California, Case No. 3:14-cv-02418-GPC-JLB. (Notice of Removal 1:1, ECF No. 1.)

Plaintiff alleges that Defendant manufactures, distributes, and retails jeans that were labeled as "Made in USA" but contained foreign made components (the "Jeans.") (Compl. 2:2–5.)  Specifically, Plaintiff alleges that the Jeans contain foreign-made buttons, rivets, zipper assembly, thread, and/or fabric.  (*Id.* at 4:2–5.)  Thus, according to Plaintiff, Defendant falsely marketed and concealed the true country of origin of the Jeans' components in violation of California law.  (*Id.* at 4:6–7.)

Presently, the Plaintiff's Unopposed Motion for Preliminary Approval of a Class Action Settlement and Certification of Settlement Class is before the Court.  (Plaintiff's Notice of Motion and Motion: 1) Granting Preliminary Approval of Class Settlement; 2) Scheduling A Final Approval Hearing; and 3) Directing That Notice Be Sent to Class Members ("Mot. Settl."), ECF No. 35.)  As part of the settlement, Defendant agreed to distribute $20 coupons to Class Members who submit a valid claim.  (Donobli Decl. Ex. 1, at 18:5, ECF No. 35-2.)  Class Members can receive up to two coupons without proof of purchase, any coupons in excess of $40 must be supported by proofs of purchase for the Jeans.  (*Id.* at 18:7–9.)

The Settlement provides a *cy pres* donation of $250,000, paid over a period of 5 years.  Defendant will make awards to the following charities: Step Up Women's Network, FIDM Scholarship, Race for the Cure, Juvenile Diabetes Research Foundation,

and Ability First.  (Proposed Order Approving Class Settlement ("CAS") at 11:12–18.)
The Settlement also includes an injunction.  The injunction requires Dutch to change its
labels to reflect the component's countries-of-origin by adding qualifying language (CAS
Ex. 1 at 11:3 – 9.)

Finally, the Settlement provides for the payment of attorney's fees and costs.  The
parties agreed to a clear sailing provision for Plaintiff's attorney's fees not exceeding
$175,000.00.  (Mot. Settl. 8:7.)  Defendant also agreed to pay for costs for providing
notice and administering the claims not to exceed $90,000.00.  (*Id.* at 9:5–9.)  The Class
Representative will receive a $5,000.00 incentive payment (*Id.* at 8:8–10.)

## II.   DISCUSSION

### a.  Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class
actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 168, 1276 (9th Cir. 1992).  However,
when the parties settle before class certification, the court must "peruse the proposed
compromise to ratify both the propriety of the certification and the fairness of the
settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The Court must
first assess whether the proposed class meets the certification requirements and then
whether the proposed settlement is "fundamentally fair, adequate, and reasonable.'  *Id.*

### b.  Class Certification

The Court must first address whether the proposed settlement class meets the class
certification.  The settlement class under Rule 23(b)(3) must meet the prerequisites set
forth in Rule 23(a) and the requirements in 23(b)(3).  When ruling on class certification
in the settlement context, the court "must pay undiluted, even heightened, attention to
class certification requirements because, unlike in a fully litigated class action suit, the
court will not have future opportunities to adjust the class, informed by the proceedings
as they unfold."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### i.  Proposed Settlement Class

The parties seek provisional certification for the following class, "persons in

California who purchased in California or through a website maintained by Dutch, LLC, Defendant's Current/Elliot jeans product that contained any foreign-made component parts that was labeled 'MADE IN THE USA' or 'MADE IN THE USA' (the 'Jeans'), from September 5, 2010 to December 31, 2015, for non-commercial use." (Mot. Settl. at 6:9–15.) "Excluded from the Settlement Class are all persons who are employees, directors, officers, and agents of Defendants or its subsidiaries and affiliated companies, as well as the Court and its immediate family and Staff." (*Id.* at 6:15–18.)

### ii.  Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class certification: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy.  Fed. R. Civ. P. 23(a).

### 1.  Numerosity

The parties contend the settlement class meets the numerosity requirement. Numerosity is met if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In the present case, the parties established that Defendant sold 3,446 Jeans directly to customers.  (Gallegos Decl. 2:13–14, ECF No. 1-3.)  Additionally, Defendant sold 397,982 Jeans wholesale to boutiques and major department stores.  (*Id.* at 2:11–12.)  Class Members are undoubtedly too numerous to join as plaintiffs, therefore, the settlement class meets the numerosity requirement.

### 2.  Commonality

The parties next contend the settlement class meets the commonality requirement. Commonality is met if "there are any questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality requires that plaintiffs show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Here, the proposed Class Members suffered the same injury: they all purchased jeans that Defendant labeled as "Made in USA" but contained alleged foreign-made component parts.  The Class Members share several common questions of law: 1)

whether Dutch violated California Business and Professions Code section 17533.7; 2) whether Dutch violated California Business and Professions Code section 17200; 3) whether Dutch violated California Consumers Legal Remedies Act; and 4) whether Dutch negligently misrepresented the Jeans as "Made in USA." (Compl. 1:1; ECF No. 1-6.) A determination into the truth or falsity of the origin of the Jeans' component parts would necessarily determine the validity of each four of these questions of law for each class member. Accordingly, the proposed settlement class meets the commonality requirement.

### 3. Typicality

The parties next contend the settlement class meets the typicality requirement. Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class they seek to represent and they must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The Ninth Circuit interprets typicality permissively. *Hanlon*, 150 F.3d at 1020. The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Id.*

Here, Plaintiff's claims arise from the same facts as those of the class: they all purchased Dutch jeans that were labeled "Made in USA" but contained alleged foreign-made components. (Compl. 2:2–5.) Additionally, Plaintiff's claims are based on the same legal theories as those of the class. Therefore, Plaintiff meets the typicality requirement.

### 4. Adequacy

Finally, the parties contend the class meets the adequacy requirement. Representative parties must be able to "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff "does not have conflicts of interest with the proposed class" and is "represented by qualified and

competent counsel." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007). Adequacy of representation is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 (9th Cir. 2011) (quoting in part *Staton*, 327 F.3d at 960).

In the present action, Plaintiff and Counsel have no conflicts of interest with other Class Members.   As discussed above, Plaintiff's claims are typical of those of other Class Members.  Plaintiff and the Class Members share the common goal of protecting consumer's rights to have properly labeled products.

Class Counsel has experience prosecuting consumer rights class actions.  (Donobli Decl. 6:12–7:8.)  John Donboli was admitted to the State Bar of California in 1999 and is a founding partner at Del Mar Law Group, LLP.  (*Id.*)  Mr. Donboli practices in class action, and has brought several class actions under California Business and Professions Code section 17533.7.  (*Id.*)  Therefore, Plaintiffs satisfy the Rule 23(a) class certification prerequisites.

### iii.  Rule 23(b)(3) Requirements

Class actions under 23(b)(3) must meet two additional requirements.  First, the common questions must predominate over individual questions. Fed. R. Civ. P. 23(b)(3). Second, the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.*

### 1.  Predominance

Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (internal quotations omitted). "Rule 23(b)(3) requires a showing that questions common to the class predominate." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013).  The District Court must assess the relationship between individual and common issues.

Here, the common questions predominate over the individual questions.  As discussed above in commonality, there are several common questions bind the class

together.  The core question is whether Dutch violated California Business and Professions Code 17533.7 when it labeled its jeans "Made in the USA" when they contained foreign-made component parts.  Therefore, the class meets the predominance requirement.  *Id.*

### 2.  Superiority

The superiority requirement provides a list of four non-exhaustive factors to determine whether the class action device is superior to individual actions.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  Those factors are:

(A)    The interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B)    The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)    The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    The difficulties likely to be encountered in the management of a class action.  *Id.*

Factors (C) and (D) are irrelevant because the parties have agreed to a pre-certification settlement.  *Amchem Products v. Windsor*, 524 U.S. 591, 620 (1997).  The individual claimants have almost no interest in controlling the prosecution of their own actions because individual legal costs far outstrips any potential recovery.  Additionally, this Court knows of no concurrent litigation pending concerning the issues in this case.

### c.  The Settlement

At the preliminary approval stage, the Court must review the parties' proposed settlement to determine whether the settlement is within the permissible "range of possible of approval" and thus, whether the notice and the scheduling of the formal fairness hearing is appropriate.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (internal quotations omitted).  The fairness inquiry "focuses primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of

3:14-cv-02418-GPC-JLB

self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960.  The settlement is taken as a whole, and not merely in its component parts.  *Id.*  Additionally, the parties may not collude during settlement negotiations.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

### i.   Gift Card

The parties argue that the $20 e-gift certificate is appropriate because Class Members faced a risk that they would receive no compensation at trial.  (Mot. Settl. 12:14–18.)  The parties alleged that proving restitution would require Plaintiff "to expend over $100,000 in expert fees . . . to develop a restitution model that *might* be approved by this Court."  *(Id.* at 12 n.3.)  Additionally, the parties allege that they came to the $20 amount after lengthy negotiations and the amount "is based on calculations of the foreign-made component parts in the Class Products in conjunction with a factoring of the risks of potentially receiving no monetary recovery to the Class at time of trial."  (*Id.* at 7:11–15.)

### 1.  Gift Card as a Coupon

The threshold issue is whether the gift certificate should be considered a coupon.  Coupons require class members to pay their own money before they can take advantage of the coupon.  *See In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 951 (9th Cir. 2015).  The Senate Judiciary Report on the Class Action Fairness Act focused "on settlements that involve a discount—frequently a small one—on class members' purchases from the settling defendant."  *Id.* (citing S.Rep. No. 109–14, at 15–20 (2005)).  The report itself listed several examples, including a settlement that offered class members coupons worth $25 to $55 off of a future cruise; a $0.28 Food Lion coupon; and $0.50 coupons to purchase apple juice.  S.Rep. No. 109-14, at 15–20 (2005), 2005 U.S.C.C.A.N. 3, 16.

By contrast, the Ninth Circuit in *In re Online DVD* found that the $12 offered gift card to Wal-Mart did not amount to a gift card.  779 F.3d at 952.  The Court first discussed the Senate Judiciary Report which focused "on settlements that involve a discount—frequently a small one—on class members' purchases from the settling defendant."  Unlike the examples from the Senate report, which only gave settlement recipients the ability to receive a discount, the $12 gift cards to Wal-Mart, a low cost retailer, "[gave] class members $12 to spend on any item carried on the website of a giant, low cost retailer."  *Id*. at 951.  Several other district courts have reached the same conclusion with similar gift cards.  *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255–56 (E.D. Pa. 2011) (holding that $20 Rite Aid gift cards that can be used for thousands of products are more like cash than coupons); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149, 2008 WL 8150856, at *2, *4–16 (C.D. Cal. Jul. 21, 2008) (finding that a $67.50 gift card to Victoria's Secret was appropriate when the face value of the card was ten times greater than the amount a class would have been entitled for her work).

The gift cards in the instant case are essentially coupons because they require Class Members to pay out of their own pocket before they can take advantage of the coupons. While the face value of the coupon is $20, the average price of the Jeans is $205.  (Mot. Settl. 7:3–5; Gallegos Decl. 2:23–24.)  Under the Settlement, the Class Members do not receive restitution, but rather an average 10% discount on a future purchase of denim. Additionally, Class Members whom wish to use the coupons can only spend them at currentelliott.com; not a store location.  (Mot. Settl. 6:4.)  The least expensive item on the website, including clearance items, currently costs $58.80.[1]  Thus, the highest possible value for a Class Member's coupons is a 34% discount on a future purchase.  Unlike the Walmart coupon in *In re Online DVD* or the Rite Aid gift card in *Reibstein*, the gift cards here cannot purchase an entire pair of jeans, a jacket, or a T-shirt—indeed, any product

---

[1] *See, e.g.*, Current/Elliot, <u>The Muscle Tee</u>, http://www.currentelliott.com/shop/sale/the-muscle-tee-vintage-white-cc-motel (last visited Apr. 25, 2016).

currently offered on Current/Elliot's website.  Because the Class Members must pay out of pocket to utilize the gift card, the gift card amounts to a coupon.

## 2.  Coupon Settlement Analysis

Both the courts and Congress generally disfavor coupon settlements.  *See Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014).  A court must "consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement" to determine the fairness of a coupon settlement.  S.Rep. No. 109–14, at 31.

Courts reject coupons whose face value is far less than its actual value.  *See*, *e.g.*, *True v. American Honda Co.*, F. Supp. 2d 1052, 1074 (C.D. Cal. 2010).  Coupons are worth less than the same amount of cash and therefore cannot be valued at face value. *See id.*  Some factors a court weighs to determine the value of the coupon are the amount of the discount, transferability of the coupon, class member usage rate, and the value of the coupon to the defendant.  *See id.* at 1073–1075; *Radosti v. Envision EMI, Inc.*, 717 F. Supp. 2d 37, 43 (D.D.C. 2010).  For example, in *True*, the parties agreed to a settlement that included two rebate options and a cash payment.  *Id.* at 1060–61.  Rebate "Option A" was a $1,000 cash rebate for class members who trade in their vehicle and purchase a Honda.  *Id.* at 1060.  Option B was a $500 cash rebate for class members who kept their vehicle and purchased a Honda.  The court in *True* noted that coupons are worth less than the same amount of cash.  *Id.*  Honda's offered rebates were worth even less because they were not transferable.  *Id.*  Additionally, these coupons cost Honda less and could result in a net benefit with each car purchased.  *Id.*

However, courts will approve even seemingly inadequate settlements if the underlying claims are frivolous.  *See In re Mexico Money Transfer Litig.*, 267 F.3d 743 (6th Cir. 2001).  The plaintiff class brought a RICO action over the phrase "Send $300 to Mexico for $15," because the wire transfer company collected the $15 customer fee as well as the difference between the retail currency exchange rate and the wholesale exchange rate.  *Id.* at 745.  The class settlement included a $6 coupon off the price for a

future wire transfer. *Id.* at 746. While the coupons were low in value, the fact that the defendants did not appear to break the law allowed the parties to settle for a low amount. *Id.* at 749 ("Nothing in this transaction smacks of fraud, so the settlement cannot be attacked as too low.").

In the instant case, the actual value of the offered coupon is far less than its face value. As discussed above, the discount offered by the coupons falls between 10% and 34%, which is no greater than average discounts offered by retail chains. Class Members cannot transfer the coupons, which further limits the coupon's value. As noted above, Class Members can only spend the coupons at currentelliott.com, not a store location. While the parties claim the amount was aggressively negotiated over, Class Members would value $20 in cash greater than an on-average 10% coupon on another pair of jeans from a company they allege deceived them about the source of manufacture of the jeans Class Members previously purchased from them. Like *True,* Dutch stands to experience a net benefit from the coupons.

Additionally, the underlying claims do not appear to be frivolous in this case. While Dutch does not admit guilt, it recognizes the risks of going to trial and acknowledges it could lose the suit. (Mot. Settl. 11:13–19.) Additionally, Plaintiff's concerns were on creating an appropriate damages model rather than proving its claims. (*Id.* at 12:14–18.) Therefore, the underlying claims are not frivolous.

The $20 gift card is worth significantly less than face value. Additionally, the underlying claims do not appear to be frivolous. Therefore, the coupon settlement is inadequate.

### ii.   *Cy Pres* Award

The settlement also includes a direct *cy pres* award. The parties argue that *cy pres* is appropriate in this settlement because Class Members are largely women and the goals of the selected beneficiaries benefit women. (Mot. Settl. 16:4–7.) Additionally, the parties allege that the *cy pres* award ensures that Dutch "incurs a minimum of liability" and, thus, "shows significant usefulness in effectuating the deterrent and disgorgement

purposes of" the underlying cause of action.  (*Id.* at 16:14–17 (internal quotation marks omitted) (citation omitted).)

A *cy pres* remedy is a settlement remedy where the class members receive an indirect benefit rather than a direct benefit.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).  These awards often take the form of donations by the defendant to third-party charities.  *Id.*  Typically, *cy pres* awards distribute unclaimed class funds to charity, however, courts have also granted these awards if the award is non-distributable.  *See*, *e.g.*, *id.*  "[C]y pres distribution must be guided by (1) the objectives of the underlying statutes and (2) the interests of the silent class members."  *Naschin v. AOL*, 663 F.3d 1034, 1040 (9th Cir. 2011) (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir. 1990)).

A *cy pres* award meets the objectives of the underlying statute when the *cy pres* recipient's mission and the statute's goals have a non-tenuous connection.  *See Naschin*, 663 F.3d at 1040.  In *Naschin*, AOL agreed to give $25,000 to three charities: the Legal Aid Foundation of Los Angeles, the Federal Judicial Center Foundation, and the Boys and Girls Club of America in Los Angeles and Santa Monica as part of a class action settlement.  *Id.*  However, the Ninth Circuit found that none of the stated goals of the charities had anything to do with the underlying statutes.  *Id.*  According to the Court, the parties should have chosen charities related to the cause of action, such as, "any number of non-profit organizations that work to protect internet users from fraud, predation, and other forms of online malfeasance."  *Id.* at 1041.

Second, a *cy pres* award provides reasonable certainty that a member of the class will benefit if a non-tenuous connection exists between the recipient's mission and the absent class member's interests.  The second prong may be satisfied in by showing that either the donation accounts for the geographic distribution of the class, or the reward provides a reasonable certainty that a member of the class will benefit from the distribution.  *See Naschin*, 663 F.3d at 1040.  In *Naschin*, the 9th Circuit found that donations to the Boys and Girls Club of Los Angeles and Santa Monica, Los Angeles

Legal Aid, and the Federal Judicial Center did not fully account for the broad geographic distribution of the class.  *Id.*

Finally, "a class settlement fund is non-distributable when the proof of individual claims would be burdensome or distribution costly."  *Six Mexican Workers*, 904 F.2d at 1305.  In *Naschin*, the Ninth Circuit found the direct settlement impracticable because each class member stood to make three cents, much less than the cost of notice.  *Naschin*, 663 F.3d at 1037.

The *cy pres* award in the instant case fails to meet the objectives of the "Made in the USA" statute because the missions of the selected charities and the statutes' goals do not share a non-tenuous connection.  The chosen recipients are Step Up Women's Network, FIDM Scholarship, Race for the Cure, Juvenile Diabetes Research Foundation and Ability First.  (CAS at 11:13–17.)  None of the chosen charities bear any relation to the goal of the statutes, consumer protection.

Additionally, the *cy pres* award does not provide reasonable certainty that Class Members will benefit because no connection exists between the recipients' missions and the absent class members' interests.  The parties argue that the charities benefit the class members because "Defendant has indicated that the recipient of the charitable contribution will be charities that concern women's issues and have a nexus to California.  Dutch makes women's jeans . . . . This is consistent with the goal of donating to charities focusing on helping and meeting the needs of women in our society."  (Mot. Settl.16:4–8.)  However, Class Members are women who purchased jeans labeled "Made in USA" that contained foreign-made components; not abstract women without a specific injury.  The chosen charities do not promote consumer protection.  Rather, the chosen charities' missions are: offering mentorship programs to at risk teenage girls (Step Up); supporting breast cancer research (Race for the Cure); supporting research for juvenile diabetes (Juvenile Diabetes Research Foundation); offering scholarships to aspiring fashion designers (FIDM Scholarships); and offering employment, recreational and socialization special needs programs (Ability First).  The chosen charities must benefit the injuries of

the class members, not merely relate to their gender.

Finally, the direct *cy pres* award is not appropriate in this case because the settlement is distributable to the class members.  Unlike the other Ninth Circuit cases which have allowed a direct *cy pres* distribution; the parties do not allege that settlement cannot be distributed to the Class Members due to the expense of notice relative to the award.  Indeed, the parties provided that the defendant pay for notice to class members up to $90,000 while the defendant's liability is capped at $1,000,000.00.  (Mot. Settl. 9: 6–9; CAS at 11:1–2.)

The Settlement's *cy pres* award does not meet the objective of the underlying statute.  Additionally, the award does not provide reasonable certainty that a member of the class will benefit.  Finally, the class settlement is not non-distributable.  Therefore, the *cy pres* award is inadequate.

### iii.    Clear Sailing Agreement

Finally, the Settlement contains a "clear sailing" provision for attorney's fees, whereby Defendant has agreed not to contest any award of attorney's fees that does not exceed $175,000.00.  CAS 2.  While the motion does not specifically address why the clear sailing provision was justified, the parties imply that the provision is justified because the settlement process was fair.  (Mot. Settl. 2:24–3:4.)  The parties negotiated in the presence of a neutral arbitrator, Judge May (Ret.).  (*Id.* at 2:25.)  The parties allege that the litigation was "hard-fought," and that "there is . . . every reason to conclude that settlement negotiations were vigorously conducted at arm's length and without any suggestion of undue influence." (*Id.* at 12:1 – 5 (quoting in part *In re Wash. Power Supply System Sec. Litig.*, 720 F.Supp. 1379, 1397 (D. Ariz. 1989)).)

"Clear sailing" provisions carry the risk of "enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class."  *In re Bluetooth Headset Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Lobatz v. U.S. West Cellular of Cailfornia, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000)).  A neutral arbitrator's presence is not dispositive as to whether the settlement is

14

comprehensive

the product of "fair, adequate and reasonable settlement negotiation[s]." *Id.*  The purpose of the Rule 23(e) fairness inquiry is to root out unfairness that is not apparent from the negotiation.  *Id.*  "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize carefully the relationship between attorney's fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Id.* at 948 (citing *Staton*, 327 F.3d at 954).

In the instant case, the "clear sailing" provision creates at least a danger of collusion during the settlement negotiations which is not refuted by the record.  The presence of Judge May does not eliminate the possibility of collusion between the parties in this case.  (Mot. Settl. 2:25.)  While $175,000.00 does not seem like an unreasonably high fee, as discussed above, Class Members receive almost no benefit from the settlement.  At most, Class Members receive a coupon good for on-average 10% off another pair of jeans from a company they allege previously deceived them.

#### iv.    Settlement as a Whole

District Courts have preliminarily approved class settlements with minor defects while giving the parties the opportunity to correct those defects.  *See*, *e.g.*, *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 670 (E.D. Cal. 2008).  For instance, had the "clear sailing" agreement been the only defect present in the settlement, the Court could have approved the settlement and allowed the parties to cure the defect before the final settlement approval.  However, taken as a whole, the settlement in this case contains sufficient deficiencies so as to not warrant preliminary approval.  The coupon distribution merely provides a future discount to Class Members; the *cy pres* award gives money to unrelated charities instead of the Class Members; and the "clear sailing" provision gives rise to at least a danger of collusion.  Therefore, the Court must deny the settlement.

### III.    CONCLUSION

Accordingly, the Motion for Preliminary Approval of Class Action Settlement is **DENIED**.  The Court will permit the parties an additional sixty (60) days from the

issuance of this Order to file a renewed motion for preliminary approval of class action settlement that cures the deficiencies identified in this Order.

**IT IS SO ORDERED.**

Dated:  April 26, 2016

Hon. Gonzalo P. Curiel
United States District Judge

3:14-cv-02418-GPC-JLB