UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA HOFMANN, an individual and on behalf of all others similarly situated,<br><br>                       Plaintiff,<br><br>v.<br><br>DUTCH LLC, a California Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>                       Defendant. | Case No.: 3:14-cv-02418-GPC-JLB<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**<br><br>[Dkt. No. 43] |

    Before the Court is Plaintiff's third motion for preliminary approval of the proposed class settlement. Dkt. No. 43-1. Because all parties have agreed to the proposed settlement, Defendant Dutch, LLC ("Defendant") does not oppose this motion. Dkt. No. 45. On January 10, 2016, the Court issued a tentative ruling denying Plaintiff's motion for preliminary approval. Dkt. No. 48. The Court held a hearing on the motion on January 19, 2017. After considering the parties' submissions and oral argument, and for the reasons that follow, the Court **DENIES** Plaintiff's motion for preliminary approval.

# BACKGROUND

### 1. First Motion for Preliminary Approval

On April 26, 2016, the Court denied Plaintiff's initial motion for preliminary approval of the class settlement. Dkt. No. 37. The initial proposed settlement provided for: (1) $20 worth of e-gift certificates for each of the class members; (2) $250,000 in *cy pres* awards; and (3) up to $175,000 in plaintiff's attorney's fees with a "clear sailing" provision attached.[1]

The Court identified three problems with the proposed settlement, namely: (1) that the e-gift certificates effectively constituted coupons because they required class members to pay out of their own pocket before they could redeem them; (2) that the *cy pres* award failed to meet the objectives of the underlying consumer protection statutes; and (3) that, when considered in conjunction with the other provisions of the proposed settlement, the "clear sailing" provision "created at least a danger of collusion during the settlement negotiations which is not refuted by the record." *Id.* at 9-15. The Court permitted the parties an additional sixty days to file a renewed motion for preliminary approval of class action settlement that cured the deficiencies identified. *Id.* at 15.

### 2. Second Motion for Preliminary Approval

On August 16, 2016, the Court denied Plaintiff's second motion for preliminary approval of the class settlement. Dkt. No. 41. For the renewed attempt to propose a settlement, Plaintiff proposed the following: (1) one denim tote bag ($128 retail value) and $20 e-gift certificates for the class members; (2) $250,000 in *cy pres* awards, to the same charities as proposed in the initial settlement; and (3) up to $175,000 in Plaintiff's attorney's fees with the same "clear sailing" provision attached. *See* Dkt. No. 38, Ex. 1. In other words, the only difference between the first and second proposed settlement was the addition of the denim tote bag. The Court denied the parties' renewed motion for

---

[1] The "clear sailing" provision refers to the agreement between Plaintiff's counsel and Defendant that the Plaintiff's attorney fee award will not exceed a fixed amount. *See* Dkt. No. 43-1 at 16.

preliminary approval because it did not cure the deficiencies that the Court had previously identified.  Dkt. No. 41 at 2.  In particular, the Court emphasized that the second motion did nothing to address the Court's concern that the proposed *cy pres* award did not conform to Ninth Circuit legal authority.  *Id.*

### 3. Third Motion for Preliminary Approval

Plaintiff filed the instant motion for preliminary approval on October 14, 2016.  Dkt. No. 43.  Here, the proposed settlement consists of (1) a current-Elliot brand tote bag (retail value of $128.00) and electronic gift card codes "redeemable on www.CurrentElliott.com only and loaded with values of multiples of $20.00 corresponding to the number of units of Class Products purchased during the Class Period"; (2) $250,000 in *cy pres* awards; (3) up to $175,000 in attorney's fees, with the same "clear sailing" provision; and (4) injunctive relief.  *Id.* at 6, 11-13.

### DISCUSSION

The Ninth Circuit has a strong judicial policy that favors settlements in class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 168, 1276 (9th Cir. 1992).  However, when the parties settle before class certification, as is the case here, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  To that end, a reviewing court must engage in two, separate inquiries: (1) whether the proposed class meets the certification requirements and (2) whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  *Id.*

The Court previously addressed both of these requirements in its April 26, 2016 Order denying Plaintiff's first motion for preliminary approval.  Dkt. No. 37.  At that time, it concluded that Plaintiff had demonstrated that it was proper to certify the class, but had failed to demonstrate that the settlement was fundamentally fair, adequate, and reasonable.  *Id.*  As such, the Court's inquiry, here, will focus on the latter inquiry.

/ / / /
/ / / /

### A. Fundamental Fairness of Settlement

Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). When assessing whether a settlement meets these criteria, the court must evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). It is, therefore, not within the district court's role to "delete, modify or substitute certain provisions" of the settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)). Rather, "[t]he settlement must stand or fall in its entirety." *Id.*

In assessing the fairness of a settlement, a court generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). An even more exacting fairness standard is required where, as here, the settlement under review was negotiated prior to class certification. *Id.* ("consideration of these eight [ ] factors alone is not enough to survive appellate review" when there has been no class certification). A more probing inquiry is warranted under such circumstances because there is an increased danger of "collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a courtdesignated class representative." *Hanlon*, 150 F.3d at 1026. "[C]ourts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947.

/ / / /

/ / / /

### B. *Bluetooth* factors

The causes of action underlying this lawsuit inform the Court's assessment of the *Bluetooth* factors and ultimate conclusion that the factors weigh in favor of settlement.

Plaintiff has brought suit against Defendant for violation of California's "Made in USA" statute (§ 17533.7 of the California False Advertising Law), Unfair Competition Law ("UCL") (based on a "Made in USA" statutory violation), and Consumer Legal Remedies Act ("CLRA"). *See generally* Complaint, Dkt. No. 1-6.

Section 17533.7 of the Cal. Bus. & Prof. Code (the "Made in USA" statute) states that a product may not be represented as "Made in U.S.A." if the product itself "or any article, unit, or part thereof, has been entirely or substantially made outside the United States." Such a designation is also prohibited if the product or its components were "entirely or substantially made, manufactured, or produced outside the United States." Cal. Bus. & Prof. Code § 17533.7. That a product is designed, engineered, finished, or otherwise processed in the United States does not render "the foreign work performed on the part unsubstantial." *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 50 (Cal. Ct. App. 2006). Rather, if any substantial creation, manufacture or production of a product occurs outside of the United States, the "Made in U.S.A" designation is unlawful. *Id.* at 51. "To prevail on a false advertising claim, a plaintiff need only show that members of the public are likely to be deceived." *Id.* at 48 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)) A plaintiff can make such a showing by demonstrating that a reasonable consumer — that is, one who "is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture"— would have been deceived or misled. *Id.* In determining whether a statement is deceptive or misleading, the primary evidence is the advertising itself. *Brockey v. Moore*, 131 Cal. Rptr. 2d 746, 756 (Cal. Ct. App. 2003).

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer," including "using deceptive

1 representations or designations of geographic origin in connection with goods or
2 services." Cal. Civ. Code § 1770.  The same standards that dictate whether a
3 representation is deceptive or misleading under the False Advertising Law, also apply to
4 claims under the CLRA.  *Colgan*, 38 Cal. Rptr. 3d at 46 (citing *Consumer Advocates v.*
5 *Echostar Satellite Corp.*, 8 Cal. Rptr. 2d 22, 29 (Cal. Ct. App. 2003)).  As such, any
6 conduct that is likely to mislead a reasonable consumer violates the CLRA.  *Nagel v.*
7 *Twin Labs., Inc.*, 134 Cal. Rptr. 2d 420, 431 (Cal. Ct. App. 2003).

8     Here, the Plaintiff's case revolves around the "Made in the USA" label that
9 Defendant Dutch placed on their jeans during the relevant period.  Complaint ¶ 11, Dkt.
10 No. 1-6 at 3-4.  Plaintiff alleges that she bought a pair of Current/Elliot jeans bearing a
11 Made in the U.S.A label when, in fact, the jeans contained foreign-made buttons, rivets,
12 zipper assembly, thread, and/or fabric.  *Id.* ¶ 12.  In the Agreement of Settlement, the
13 parties indicate that Defendant voluntarily revised its label.  Dkt. No. 43-2 at 9.
14 Accordingly, the genuine dispute, here, generally concerns whether the jeans bought by
15 class members were comprised of foreign-made parts and whether those parts were
16 legally significant.

17     Given these relevant legal standards and the record available to the Court, the
18 Court observes that Plaintiff's case is relatively strong.  Provided that Plaintiff can set
19 forth evidence proving that the zippers, buttons, and other parts of the jeans were foreign-
20 made, Plaintiff's chances of prevailing under California's false advertising laws would be
21 high.  That said, because the parties settled before the Court could rule on any dispositive
22 motions or factual disputes, the weight of the Court's assessment is lessened.
23 Accordingly, this factor weighs slightly against settlement.

24     The Court further notes, however, that the risk, expense, complexity, and duration
25 of any litigation, in addition to the risk of maintaining class certification throughout the
26 suit, weighs heavily in favor of settlement.  It is difficult for plaintiffs in false advertising
27 cases to calculate and prove damages for the entire class.  *See, e.g.*, *Colgan*, 38 Cal. Rptr.
28 3d at 57-63.  Any restitution award must be supported by substantial evidence, yet

questions concerning how to quantify the consumer impact of a "Made in the U.S.A." representation or the advantage inuring to Current/Elliot from adopting such marketing, poses a formidable challenge to Plaintiff's case. *See* id. Decertification of the class is yet another risk Plaintiff faces. In *Brazil v. Dole*, the Ninth Circuit affirmed a judge's decision to decertify a class seeking damages for food products bearing an "All Natural Fruit" label because the plaintiff could not explain how the premium paid for the "All Natural Fruit" could be "calculated with proof common to the class." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 535 (9th Cir. 2016); *see also Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, *14 (N.D. Cal. Nov. 6, 2014). Similarly, here, there is no guarantee that a class would be, or remain, certified given the inherent difficulties in proving damages on a class-wide basis.

The sixth, seventh, and eighth *Bluetooth* factors are either neutral or point in favor of settlement. While there is no government participant in the settlement, the Court notes that Plaintiff's counsel are experienced in consumer class actions and have litigated similar cases in federal and state court. Dkt. No. 43-2 at 6-7. As for class member reactions to the lawsuit, that factor is better addressed at the final, rather than the preliminary, approval of settlement and after class members have been given an opportunity to object.

**C. Settlement Provisions**

Although the above-mentioned factors weigh in favor of settlement, the Court concludes that obvious and material deficiencies in the substance of the settlement (i.e., the fourth *Bluetooth* factor) prevent the Court from approving it as fair, adequate, and reasonable.

**1.  *Cy pres* award**

Chief among the settlement's deficiencies is the *cy pres* award.

A *cy pres* remedy is a "settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment." *Lane*, 696 F.3d at 820. Stated differently, the *cy pres* doctrine

allows a court to "distribute unclaimed or non-distributable portions" of a settlement to the "next best" class of beneficiaries. *Id.* Whether a *cy pres* remedy is fair, adequate and reasonable depends upon whether the award "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statues, and the interests of the silent class members." *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). An award that does not target the plaintiff class or that fails to provide reasonable certainty that any member will be benefitted by the award, will not satisfy the fairness inquiry. *Id.* at 1040. Thus, a reviewing court that approves a *cy pres* distribution that has no relation to the class or the underlying claims is applying the incorrect legal standard and abusing its discretion. *Dennis v. Kellogg Co.*, 697 F.3d 858, 866 (9th Cir. 2012).

Plaintiff's previous settlement proposed that Defendant pay $50,000 to the Step Up Women's Network and that it distribute another $200,000 among Step Up Women's Network, FIDM Scholarship, Race for the Cure, Juvenile Diabetes Research Foundation, and Ability First. Dkt. No. 38-1 at 18. Here, Plaintiff has modified the previously submitted *cy pres* award by proposing that Defendant instead donate $200,000, over four years, to a scholarship endowment at the consumer science department of a not-for-profit institution of higher education and an additional $50,000 to Step Up Women's Network. Dkt. No. 43-1 at 22.

The Court is perplexed that Plaintiff continues to include the $50,000 contribution to Step Up Women's Network in the *cy pres* award given the Court's previous conclusion that the charity failed to meet the objectives of the statutes at issue in this case.

> Class Members are women who purchased jeans labeled "Made in USA" that contained foreign-made components; not abstract women without a specific injury. The chosen charities do not promote consumer protection. Rather the chosen charities' missions are: offering mentorship programs to at risk teenage girls [Step Up] . . . .

*See* Dkt. No. 37 at 13. Dutch's explanation for continuing to include this $50,000 donation to Step Up is equally puzzling. "Dutch has been made aware of Ninth Circuit legal authority that requires a sufficient nexus between the charitable purpose of the

8

charity and the objects of the underlying statutes (i.e., consumer protection statues in this Action) but also notes that its consumer demographic is mostly women." Dkt. No. 43-1 at 10. Continuing to repeat the fact that Defendant's clientele is mostly women does not somehow make Defendant's charitable donation to Step Up legally sufficient. The Ninth Circuit's jurisprudence on *cy pres* awards is not optional or vague, but binding and unequivocal. A *cy pres* award meets the objectives of the underlying statute when the *cy pres* recipient's mission and the statute's goals have a non-tenuous connection. *See Naschin*, 663 F.3d at 1040. Donating to a charity that "focus[es] on helping and meeting the needs of women in our society" does not meet the underlying objectives of the consumer protection statutes, no matter how many times Plaintiff emphasizes the point. Dkt. No. 43-1 at 22. Accordingly, this aspect of the *cy pres* award is legally insufficient.

Defendant's proposed donation to an unnamed, unidentified scholarship endowment at a consumer science department like the one at California State University, Northridge is likewise deficient under Ninth Circuit jurisprudence. Plaintiff argues that making such a donation meets the rigorous *cy pres* standard because "making donations to support the study of and to advocate for consumer science provides direct benefits to the consumer population as a whole." *Id.* The Court disagrees. While noble, making a scholarship to one or two individuals who intend to study consumer science, does not target the plaintiff class and fails to provide reasonable certainty that any class member will be benefitted by the award. *See Naschin*, 663 F.3d at 1040.

Yet even if Plaintiffs had, say, proposed that Defendant create a new charitable entity, as was the case in *Lane v. Facebook*, to distribute settlement funds to promote consumer protection, such a proposal would still be insufficient because Plaintiff has not identified any *cy pres* beneficiary. The proposed settlement's failure to offer a concrete, identifiable beneficiary of the $200,000 *cy pres* award prevents this Court from approving the donation. As stated in *Dennis v. Kellogg Co.*, a case involving a settlement that similarly lacked a named beneficiary, "[t]he difficulty here is that, by failing to identify the *cy pres* recipients, the parties have restricted our ability to undertake the

1  searching inquiry that our precedent requires." 697 F.3d at 867.  Likewise, here, the
2  Court cannot conduct the rigorous review required of it when Plaintiff has failed to
3  identify which consumer science department will receive Defendant's donation.  The
4  Court is also not persuaded by any suggestion that this determination might be made at a
5  later date, as that is not a legally cognizable reason for approving the settlement now.  *See*
6  *id.* ("Our concerns are not placated by the settlement provision that the charities will be
7  identified at a later date and approved by the court").  As such, the Court also finds this
8  portion of the *cy pres* award legally insufficient.
9       In sum, Plaintiff's repeated failure to abide by Ninth Circuit precedent governing
10 *cy pres* awards, standing alone, warrants denying the motion for preliminary approval.
11 *See Hanlon*, 150 F.3d at 1026 ("[t]he settlement must stand or fall in its entirety).

**2.  Gift Codes**

13      Yet another deficiency in the proposed settlement concerns the gift codes.
14      Coupons require class members to pay their own money before they can take
15 advantage of the coupon.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,
16 951 (9th Cir. 2015).  Both the courts and Congress generally disfavor coupon settlements.
17 *See Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014).  A court must
18 "consider, among other things, the real monetary value and likely utilization rate of the
19 coupons provided by the settlement" to determine the fairness of a coupon settlement.
20 *See In re Online*, 779 F.3d at 951 (citing S.Rep. No. 109–14, at 31).
21      Courts may reject coupons whose face value is far less than its actual value.  *See,*
22 *e.g.*, *True v. American Honda Co.*, 520 F. Supp. 2d 1052, 1074 (C.D. Cal. 2010).
23 Coupons are worth less than the same amount of cash and therefore cannot be valued at
24 face value.  *See id.*  Some factors a court weighs to determine the value of the coupon are
25 the amount of the discount, transferability of the coupon, class member usage rate, and
26 the value of the coupon to the defendant.  *See id.* at 1073-75; *Radosti v. Envision EMI,*
27 *Inc.*, 717 F. Supp. 2d 37, 43 (D.D.C. 2010).

Under the previous settlement, class members would have received a gift card valued at $20.00. Dkt. No. 38-1 at 4. Here, members of the class will receive at least $20 in electronic gift card codes, and possibly more depending on the number of units purchased by the class member. Dkt. No. 38-1 at 8 ("Defendant will distribute Current Elliott . . . electronic gift cards valued at $20.00 each to participating Class Members . . . for each qualifying product purchased during the Class Period."). This change in the proposed settlement does not address the concerns that were raised by the Court in its April 26 Order denying Plaintiff's proposed settlement. *See* Dkt. No. 37. There, the Court concluded that the gift cards were an inadequate remedy because they were worth significantly less than their face value and because Plaintiff's underlying claims were not frivolous. *Id.* at 11. The Court is not now persuaded that these coupons have been legally cured just because the settlement proposes that a certain subset of class members (i.e., those who bought more than one of Defendant's items) will receive more than one $20 gift card. The proposed settlement still fails to contradict the Court's conclusion that the "face value" of the gift card "is far less than its actual value," and thus, the Court still finds this aspect of the settlement problematic.

At oral argument, Plaintiff's counsel acknowledged the Court's dissatisfaction with the gift codes, as stated in its April 26, 2016 Order. Nonetheless, Plaintiff suggested that the gift codes continued to be part of the final settlement because it is the tote bag and not the e-gift cards that are the linchpin of the restitution. While the Court appreciates Plaintiff's point that the gift coupons are an additional rather than the primary remedy, the Court is still not prepared to approve a settlement that contains deficiencies that the Court has identified, but the parties have not meaningfully addressed, ameliorated, or contradicted. Moreover, the Court observes that Plaintiff's repeated failure to fashion a settlement that comports with its concerns, only gives the Court more reason to be suspicious of whether Plaintiff's counsel are acting in the interest of the class members. *In re Bluetooth*, 654 F.3d at 947 ("[C]ourts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed

pursuit of their own self-interests and that of certain class members to infect the negotiations.")

### 3. Tote Bag

Plaintiff additionally proposes that class members receive one denim tote bag, with a retail value of $128, as part of the settlement. In its tentative order, the Court expressed concern about the value, to the class, of the tote bag and whether or not it was an appropriate remedy. Dkt. No. 48 at 4. At oral argument, Plaintiff's counsel emphasized that the tote bag has value — that it can be gifted away, sold on eBay, at a garage sale or that it can be worn — and that such value is worth the eight cents, nine cents, or ten cents that arguably represents the difference between the American-made parts and the foreign-made parts present in Defendant's jeans.

Yet while the Court recognizes that the tote bag is worth more than the minimal amount Defendant saved by selling any given class member a pair of jeans with foreign-made component parts, that miniscule dollar amount is not the essence of Plaintiff's suit. Plaintiff brought suit under the Consumer Legal Remedies Act, the Unfair Competition Law, and the "Made in USA" statute because Defendant labeled and marketed its jeans as "Made in the USA" when they were, allegedly, "manufactured or produced from component parts that were manufactured outside of the United States." Complaint ¶ 12, Dkt. No. 1-6 at 4. Given that this is the central allegation of the complaint, the Court remains skeptical that a Current/Elliot tote bag provides value to the class members. *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) (court abused discretion when approving a settlement without "evidence that the relief afforded by the settlement has any value to the class members"). The class members did not buy a tote bag deceptively labeled "Made in the USA," they bought a pair of jeans.[2] And there is no

---

[2] Notably, in *Paz v. AG*, a case upon which Plaintiff relied at oral argument, the approved settlement gifted class members who had bought deceptively-marketed jeans with a free pair of jeans, not a scarf, or a hat, or some other accessory. *See Paz v. AG Adriano Goldschmied, Inc. et al*, 3:14-cv-01372-DMS-DHB (S.D. Cal. filed June 4, 2014), Docket Entries 51, 62.

evidence in the record explaining the real economic value of the tote bag, the likely resale value of the tote bag, or whether the class members are likely to find value in the tote bag.

That is not to say, however, that the tote bag does not have value to the class members. Indeed, there is too little information available to the Court at this juncture to make that conclusion. Perhaps, as Plaintiff's counsel indicated at oral argument, class members will overwhelmingly find the proposed settlement satisfactory. Perhaps they will not. Regardless, what the Court requires of any preliminary settlement is that Plaintiff make a showing sufficient for the Court to satisfy the rigorous review required of it and for the Court to conclude that the proposed settlement is in the interest of the silent class members. To date, Plaintiff has failed to make any convincing showing.

### 4. Injunctive Relief

The proposed settlement also contains a permanent injunction.

> Without admitting any liability or wrongdoing whatsoever, pursuant to California Business and Professions Code Sections 17203 and 17535, the Enjoined Parties, and each of them, shall be enjoined and restrained from directly or indirectly doing or performing any and all of the following acts or practices: representing, labeling, advertising, selling, offering for sale, and/or distributing any Products that fail to comply with the California "Made in USA" Statute.

Dkt. No 43-2 at 61. At oral argument, Plaintiff's counsel emphasized that the proposed injunctive relief is the foundation of the settlement. The Court observes, however, that the value of injunctive relief does not escape the Court's rigorous review. The settling parties bear the burden of demonstrating that class members will benefit from the settlement's injunctive relief. *Koby*, 846 F.3d at 1079. As made evident by the recent outcome in *Koby v. ARS*, injunctive relief can be deemed "worthless" if it dictates the Defendant's future behavior, but does nothing to address the past wrongs suffered by the

class. *Id.* at 1079.[3] In addition, injunctive relief may also be deemed "worthless" if it "does not obligate [the Defendant] to do anything it was not already doing." *Id.* at 1080 (warning that voluntary behavior adopted by the Defendant, for the purpose of avoiding further litigation risk, not because of court- or settlement-imposed obligation, imports minimal value to a settlement). In the proposed settlement, the parties indicated that Dutch had already "voluntarily revised its labels." Dkt. No. 43-2. Thus, the Court observes that it has reason to question whether injunctive relief, standing on its own, would be a sufficient remedy for the class.

### 5. Clear Sailing Agreement

The proposed settlement also contains a "clear sailing" provision stating, in relevant part, that plaintiff's attorneys will seek no more than $175,000 in fees and the defense will not oppose the fee petition. As Plaintiff herself acknowledges, the Ninth Circuit has expressed concern about "clear sailing" provisions because they carry "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *In re Bluetooth*, 654 F.3d at 947. For this reason, the *In re Bluetooth* court identified "clear sailing" provisions as a sign of collusion between plaintiffs and defendants and instructed courts to remain attentive to them. *Id.*

With this guidance in mind, the Court observes that although the "clear sailing" provision is not a bar to settlement approval, it is a red flag indicating that the settlement may have been unfairly reached. As such, to the extent that the provision appears in any proposed settlement agreement, the Court will continue to remain vigilant as to the

---

[3] "The settlement's injunctive relief is worthless to most members of the class because it merely dictates the disclosures ARS must make in future voicemail messages for a period of two years. That relief could potentially benefit class members who are likely to be contacted by ARS during the two-year window, but there is an obvious mismatch between the injunctive relief provided and the definition of the proposed class."

underlying fairness of the proposed settlement that accompanies it and whether the settlement meets the interests of the silent class members.

### D. Settlement as a whole

The Court must evaluate the "settlement as a whole, rather than assessing its individual components." *Lane*, 696 F.3d at 818. The district court does not have the authority to "delete, modify or substitute certain provisions" of the settlement. *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.* Given the above-mentioned defects, the Court cannot approve Plaintiff's proposed settlement. Notwithstanding Plaintiff's protestations to the contrary, the deficiencies in Plaintiff's proposal do not fall within the "range of possible approval." The Court must be satisfied that any proposed settlement is "fair, adequate, and reasonable," as that phrase has been defined by binding, legal precedent, and that any Court approval be supported by sound legal findings and arguments. Accordingly, the Court concludes that any future motion for preliminary approval must meaningfully comport with the conclusions laid out in this order, and the two previous orders denying preliminary approval, and address all of the relevant concerns addressed therein. The Court will not be persuaded by mere citation to cases in this district that have approved settlements that are described as "similar." Rather, the Court must be satisfied that the record and arguments before it warrant a finding that the settlement is presumptively "fair, adequate, and reasonable" and ready to be disseminated to the class.

### CONCLUSION

The Motion for Preliminary Approval of Class Action Settlement is **DENIED**. The Court will permit the parties an additional sixty (60) days from the issuance of this Order to file a renewed motion for preliminary approval of class action settlement that cures the deficiencies identified by this Order.

////

////

////

1    **IT IS SO ORDERED.**

2    Dated:  March 2, 2017

3    Hon. Gonzalo P. Curiel
4    United States District Judge